**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| MOL HUNGARIAN OIL AND GAS PLC, <br><br> *Petitioner*, <br><br> v. <br><br> REPUBLIC OF CROATIA, <br><br> *Respondent*. | Civil Action No. 23-218 (AHA) |

<u>**Memorandum Opinion and Order**</u>

MOL Hungarian Oil and Gas PLC ("MOL") prevailed in arbitration against the Republic of Croatia and now petitions this Court to enforce the arbitration award. Croatia moves to dismiss the petition based on sovereign immunity, personal jurisdiction, *forum non conveniens*, and failure to state a claim on the merits. Having stayed proceedings pending resolution of Croatia's sovereign immunity argument, the Court now concludes immunity is foreclosed by the D.C. Circuit's recent decision in *NextEra Energy Glob. Holdings B.V. v. Kingdom of Spain*, 112 F.4th 1088 (D.C. Cir. 2024). Because each of Croatia's remaining bases for dismissal are without merit, the Court denies the motion to dismiss.

I.    **Background**

The Energy Charter Treaty ("ECT") is an investment treaty that the EU, most of its member states, including Croatia and Hungary, and some other countries signed "to promote international cooperation in the energy sector." *Id.* at 1094; *see* ECT art. 2, Dec. 17, 1994, 2080 U.N.T.S. 95. Under the treaty, contracting states agree to afford "fair and equitable treatment" to investments made by investors from the other contracting states and agree to not "impair by unreasonable or discriminatory measures their management, maintenance, use, enjoyment or disposal." ECT art.

10(1). The ECT also provides that each contracting state "gives its unconditional consent to the submission of a dispute to international arbitration" in certain tribunals, including the International Centre for Settlement of Investment Disputes ("ICSID"). ECT art. 26(3)(a) & 4(a)(i).

MOL, a Hungarian oil and gas company with investments in Croatia, brought arbitration against Croatia in ICSID, alleging Croatia "violated [its] obligations under the ECT." ECF No. 1 ¶¶ 7, 28. Croatia contested ICSID's jurisdiction, but the tribunal rejected its arguments and the parties arbitrated MOL's claims to completion. *Id.* ¶¶ 28–35. The tribunal ultimately found Croatia breached its ECT obligations and awarded MOL $183.94 million in damages, plus costs, fees, and interest. *Id.* ¶¶ 35–38.

MOL then filed the present petition to enforce the award. After Croatia moved to dismiss the petition based in part on sovereign immunity, the Court granted the parties' joint request to stay proceedings pending the D.C. Circuit's resolution of *NextEra*, which appeared likely to resolve whether an EU signatory to the ECT is entitled to sovereign immunity against enforcement of an arbitration award in an intra-EU dispute. *See NextEra*, 112 F.4th at 1093. The Circuit later issued its decision, holding that the ECT operates as an agreement to arbitrate that withdraws sovereign immunity. *Id.* at 1105. Following that decision, Croatia nonetheless renewed its motion to dismiss "both to preserve its arguments in the event the D.C. Circuit, *en banc*, or the Supreme Court, reverses or otherwise modifies *NextEra* and to distinguish certain aspects of the *NextEra* holding." ECF No. 31-1 at 1.[1] This Court stayed merits briefing to consider Croatia's renewed motion to dismiss. *See Process & Indus. Devs. Ltd. v. Fed. Republic of Nigeria*, 962 F.3d 576, 584 (D.C. Cir. 2020) (recognizing sovereign immunity should generally be resolved as early as possible).

---

[1]  The D.C. Circuit has since denied rehearing *en banc*. *NextEra Energy Glob. Holdings B.V. v. Kingdom of Spain*, No. 23-7031, 2024 WL 4940503, at *1 (D.C. Cir. Dec. 2, 2024).

## II.    Discussion

### A.  Sovereign Immunity

The Foreign Sovereign Immunities Act ("FSIA") "codifies a baseline principle of immunity for foreign states," and "then sets out exceptions to that principle." *Turkiye Halk Bankasi A.S. v. United States*, 598 U.S. 264, 272 (2023) (citing 28 U.S.C. §§ 1604–1607). Relevant here, the FSIA withdraws sovereign immunity:

> in any case . . . in which the action is brought, either to enforce an agreement made by the foreign state with or for the benefit of a private party to submit to arbitration all or any differences which have arisen or which may arise between the parties with respect to a defined legal relationship, whether contractual or not, concerning a subject matter capable of settlement by arbitration under the laws of the United States, or to confirm an award made pursuant to such an agreement to arbitrate, if . . . the agreement or award is or may be governed by a treaty or other international agreement in force for the United States calling for the recognition and enforcement of arbitral awards.

28 U.S.C. § 1605(a)(6). The D.C. Circuit has held that this "arbitration exception" to immunity applies when three jurisdictional facts are present: "(1) an arbitration agreement, (2) an arbitration award, and (3) a treaty potentially governing award enforcement." *NextEra*, 112 F.4th at 1100 (citing *Chevron Corp. v. Ecuador*, 795 F.3d 200, 204 & n.2 (D.C. Cir. 2015)). Croatia does not contest that the third fact exists here—the United States is a signatory to the ICSID Convention and federal law requires courts to enforce an ICSID award "as if the award were a final judgment of a court of general jurisdiction of one of the several States." 22 U.S.C. § 1650a(a). The first and second jurisdictional facts exist here, too.

In *NextEra*, the D.C. Circuit considered whether the FSIA's arbitration exception allowed enforcement of an arbitration award against Spain because it signed the ECT. The court explained that what matters for the purposes of the arbitration exception, and therefore for jurisdiction, is "the existence of an arbitration agreement." *NextEra*, 112 F.4th at 1101 (quoting *Chevron Corp.*, 795 F.3d at 204). The court rejected Spain's argument that the ECT was not an arbitration

agreement within the meaning of the exception, reasoning that "[t]he clear terms of the ECT's arbitration provision cover '[d]isputes between a Contracting Party and an Investor of another Contracting Party.'" *Id.* at 1102 (quoting ECT art. 26(1)). The court's holding compels the same conclusion here. Croatia, like Spain, "is undeniably a 'Contracting Party'" to the ECT. *Id.* (quoting ECT art. 1(2)); *see* ECF No. 1 ¶ 8 n.2. And MOL is, like the plaintiff companies in *NextEra*, "undeniably '[an Investor] of another Contracting Party'" because MOL is "organized in accordance with the law applicable in" Hungary. *NextEra,* 112 F.4th at 1102 (quoting ECT arts. 1(7), 26(1)); *see* ECF No. 1 ¶ 7 & n.1. MOL accordingly satisfied the first jurisdictional fact because it "showed [Croatia's] agreement to arbitrate, for purposes of the FSIA, by producing copies of the ECT." *NextEra*, 112 F.4th at 1104 (cleaned up) (quoting *LLC SPC Stileks v. Republic of Moldova*, 985 F.3d 871, 877 (D.C. Cir. 2021)); ECF No. 1-9.

MOL has likewise shown the second jurisdictional fact, "an arbitration award." *NextEra*, 112 F.4th at 1100. As with an arbitration agreement, what matters for jurisdiction is "the existence of an award." *Chevron Corp.*, 795 F.3d at 204; *see also NextEra*, 112 F.4th at 1104 ("For jurisdictional purposes, the FSIA's arbitration exception requires that the arbitral tribunal 'purported to make an award pursuant to the ECT, not that it in fact did so.'" (quoting *Stileks*, 985 F.3d at 878)). Here, MOL has provided documentation of its arbitration award, including a certified copy of the ICSID award. *See* ECF No. 1-2; *Stileks*, 985 F.3d at 877 (recognizing that such documentation "demonstrated that the arbitration exception applied" (citing *Chevron Corp.*, 795 F.3d at 204)).

Croatia acknowledges that *NextEra* forecloses the main argument it would otherwise make, preserving that argument for future *en banc* or Supreme Court review. ECF No. 31-1 at 30 & n.19. Croatia also asks this Court to distinguish *NextEra* on two grounds, but each is essentially an end-

run around the D.C. Circuit's decision. First, Croatia argues there is no arbitration agreement by pointing to two opinions by the Court of Justice of the European Union, *Slovak Republic v. Achmea B.V.*, ECLI:EU:C:2018:158 (Mar. 6, 2018), and *Republic of Moldova v. Komstroy LLC*, ECLI:EU:C:2021:655 (Sept. 2, 2021). According to Croatia, these decisions show that EU law would "negate the existence of *any* arbitration agreement under the ECT." ECF No. 31-1 at 23. The problem for Croatia is that Spain tried to make the same argument, relying on the same cases, in *NextEra* and the D.C. Circuit rejected it. The court acknowledged *Achmea* and *Komstroy* and it held, notwithstanding those decisions, that the ECT is an arbitration agreement within the meaning of the FSIA's arbitration exception. *See NextEra*, 112 F.4th at 1103. The court explained that this argument—that the ECT's arbitration provision "does not extend to EU nationals"—goes to "the *scope* of the Energy Charter Treaty, not its *existence*." *Id.* at 1103. And "disputes about the scope of an arbitration agreement, such as whether a binding arbitration agreement covers a particular dispute, are not jurisdictional questions under the FSIA." *Id.* at 1101 (quoting *Stileks*, 985 F.3d at 878).[2]

---

[2]    Croatia argues this Court can overlook the D.C. Circuit's awareness of *Achmea* and *Komstroy*, saying the court analyzed those cases "only in connection" with part of its analysis and overlooked them in later analysis which begins on the very same page. ECF No. 31-1 at 23; *see NextEra*, 112 F.4th at 1102–03. The Court declines to read the Circuit's opinion that way.

Croatia also tries to repackage this argument under the "act of state" doctrine, which "precludes the courts of this country from inquiring into the validity of the public acts a recognized foreign sovereign power committed within its own territory." *Banco Nacional de Cuba v. Sabbatino*, 376 U.S. 398, 401 (1964). But the relevant "act of state"—a determination that the ECT's arbitration provision "does not extend to EU nationals"—runs headfirst into the D.C. Circuit's holding that such questions go to "the *scope* of the Energy Charter Treaty, not its *existence*." *NextEra*, 112 F.4th at 1103. This argument goes to the merits, not jurisdiction—indeed, Croatia itself appears to acknowledge as much. *See* ECF No. 31-1 at 27 (observing that the act of state doctrine "ordinarily is a defense on the merits" and asserting, without citation, that here it "presents a threshold FSIA issue"). As described below, Croatia's act of state argument fails as to the merits as well.

Second, and relatedly, Croatia says the second jurisdictional fact, an arbitration award, does not exist because the ICSID tribunal "knew of *Komstroy* before issuing its Award" and therefore "could not have even 'purported to make an award pursuant to the ECT.'" ECF No. 31-1 at 33 (quoting *Stileks*, 985 F.3d at 878). But, again, the relevant question for the purposes of jurisdiction is "the existence of an award," and MOL has made that showing. *Chevron Corp.*, 795 F.3d at 204.

Binding circuit precedent forecloses Croatia's challenges to jurisdiction based on the scope of the ECT and the ICSID award. Arguments about "[w]hether the ECT applies to the dispute" and "*why* the ECT may not apply to the dispute" are not jurisdictional under the FSIA. *NextEra*, 112 F.4th at 1104 (quoting *Stileks*, 985 F.3d at 878–79).[3]

### B. Merits

Croatia's renewed motion to dismiss also argues that MOL's petition fails to state a claim upon which this Court can grant relief, for three reasons: the arbitration award is not entitled to full faith and credit; the act of state defense bars enforcement of the ICSID award; and the foreign sovereign compulsion doctrine bars enforcement. None of these arguments is persuasive.

The Court must accept the petition's well-pled factual allegations as true and draw all reasonable inferences in MOL's favor. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court may also consider "any documents either attached to or incorporated in the complaint and matters of which [the Court] may take judicial notice." *Equal Emp. Opportunity Comm'n v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997). A respondent may argue for dismissal

---

[3]    Croatia separately raises arguments about personal jurisdiction and *forum non conveniens*, but acknowledges they are foreclosed by binding precedent. *See* ECF No. 31-1 at 37–38. The Court accordingly rejects those bases for dismissal as well.

based on an affirmative defense only "when the facts that give rise to the defense are clear from the face of the" petition. *Smith-Haynie v. District of Columbia*, 155 F.3d 575, 578 (D.C. Cir. 1998).[4]

    *1.   The ICSID award is entitled to full faith and credit.*

Croatia first argues that MOL's petition should be dismissed because the ICSID award is not entitled to full faith and credit. According to Croatia, European law would not recognize the arbitration agreement and this Court should thus find that ICSID "lacked adjudicative authority" to arbitrate MOL's claims and that the resulting award is unenforceable. ECF No. 31-1 at 41. This argument is unsound.

The ICSID Convention, to which the United States is a party, provides that the courts of member states act as "courts of enforcement, not review" of ICSID awards. *Valores Mundiales, S.L. v. Bolivarian Republic of Venezuela, Ministerio del Poder Popular para Relaciones Exteriores*, 87 F.4th 510, 518 (D.C. Cir. 2023) (citing ICSID Convention art. 54(1)). By signing the Convention, member states agree to recognize an award "as binding," to "enforce the pecuniary obligations imposed by that award within its territories as if it were a final judgment of a court in that State," and to "treat the award as if it were a final judgment of the courts of a constituent state." ICSID Convention art. 54(1). Congress's implementing legislation accordingly instructs that the "pecuniary obligations imposed by" an ICSID award "shall be enforced and shall be given the same full faith and credit as if the award were a final judgment of a court of general jurisdiction

---

[4]    In their briefing, the parties agree that the ordinary standards and civil rules of procedure apply in evaluating MOL's petition to enforce. *See* Fed. R. Civ. P. 2 ("There is one form of action—the civil action."). The Court thus applies the ordinary rules and standards, consistent with the practice of other courts. *See Blasket Renewable Invs., LLC v. Kingdom of Spain*, No. CV 23-2701, 2024 WL 4298808, at *4 (D.D.C. Sept. 26, 2024); *Micula v. Gov't of Romania*, 104 F. Supp. 3d 42, 50 (D.D.C. 2015); *Mobil Cerro Negro, Ltd. v. Bolivarian Republic of Venezuela*, 863 F.3d 96, 124 (2d Cir. 2017).

of one of the several states." 22 U.S.C. § 1650a(a). MOL's ICSID award is accordingly binding and entitled to full faith and credit, as though it were a final judgment from another state.

To be sure, as Croatia points out, a "judgment of a court in one State is conclusive upon the merits in another State only if the court in the first State had power to pass on the merits—had jurisdiction, that is, to render the judgment." ECF No. 31-1 at 40 (quoting *Underwriters Nat'l Assurance Co. v. N.C. Life & Accident & Health Ins. Guar. Ass'n*, 455 U.S. 691, 704 (1982)). Accordingly, courts "may inquire into the jurisdictional basis of [a] foreign court's decree" and "need not" give full faith and credit if "that court did not have jurisdiction." *Underwriters*, 455 U.S. at 705. But this exception is limited and "must yield to the prohibition against relitigation." *Valores*, 87 F.4th at 520. In *Underwriters*, the Supreme Court made clear "a judgment is entitled to full faith and credit—even as to questions of jurisdiction—when the second court's inquiry discloses that those questions have been fully and fairly litigated and finally decided in the court which rendered the original judgment." *Underwriters*, 455 U.S. at 706 (quoting *Durfee v. Duke*, 375 U.S. 106, 111 (1963)).

Here, Croatia explicitly pressed its jurisdictional arguments, and they were fully and fairly litigated, during the ICSID arbitration. ECF No. 1-2 ¶¶ 454–89. The tribunal rejected Croatia's arguments and concluded it had jurisdiction over MOL's claims. *Id.* ¶ 488. Because "the matter was fully considered and finally determined," the ICSID award is "entitled to full faith and credit." *Underwriters*, 455 U.S. at 707.[5]

---

[5]    In addition to this circumscribed inquiry into whether there was a full and fair opportunity to litigate jurisdiction, the D.C. Circuit has said it is appropriate for courts to consider disputes as to the authenticity of an ICSID award and whether ICSID itself "would treat the award as binding." *Valores*, 87 F.4th at 520. Croatia does not dispute either here.

2.  *The act of state defense does not apply.*

Croatia next argues that the act of state doctrine bars enforcement of the award. The act of state doctrine "precludes the courts of this country from inquiring into the validity of the public acts a recognized foreign sovereign power committed within its own territory." *Sabbatino*, 376 U.S. at 401. It applies as a defense when the relief sought "would require a court in the United States to declare invalid the official act of a foreign sovereign performed within its own territory." *McKesson Corp. v. Islamic Republic of Iran*, 672 F.3d 1066, 1073 (D.C. Cir. 2012) (alteration omitted) (quoting *W.S. Kirkpatrick & Co., Inc. v. Environmental Tectonics Corp.*, 493 U.S. 400, 405 (1990)). The doctrine applies only "when a court *must decide*—that is, when the outcome of the case turns upon—the effect of official action by a foreign sovereign." *W.S. Kirkpatrick*, 493 U.S. at 406.

Croatia argues that enforcement of the arbitration award would require the Court "to deny the validity of multiple sovereign acts," including the European Union Court of Justice's opinions in *Achmea* and *Komstroy* and declarations of the EU and its Member States. ECF No. 31-1 at 28. But that is not accurate. To enforce the arbitration award, this Court need not opine on the validity of any foreign opinion or declaration. The ICSID Convention and its implementing legislation provide that the award is to be treated as a final judgment and that disputes of the nature Croatia raises are to be resolved by ICSID, not by this Court. The Convention states that an "award shall be binding on the parties and shall not be subject to any appeal or to any other remedy except those provided for in th[e] Convention." ICSID Convention art. 53(1). And those remedies allow parties, by application to ICSID's Secretary-General, to bring disputes about the "meaning or scope of an award"; "request revision of the award" based on discovery of new decisive facts; and seek "annulment of the award" if the tribunal was not properly constituted, exceeded its powers, was infected with corruption, departed from a fundamental rule of procedure, or failed to state its

reasons. *Id.* arts. 50-52. None of these allow Croatia to bring this act of state challenge to the award in this Court, and none contemplates this Court passing on the validity of foreign acts of state as an additional layer of review of the award. Congress's implementing statute similarly commands that ICSID awards "shall be enforced and shall be given the same full faith and credit as if the award were a final judgment of a court of general jurisdiction of one of the several states." 22 U.S.C. § 1650a(a).[6]

Under the governing authorities, this Court is called upon to "do no more than examine the judgment's authenticity and enforce the obligations imposed by the award." *Mobil Cerro Negro*, 863 F.3d at 102. And accordingly, "[n]othing in the present suit requires the Court to declare invalid, and thus ineffective as a rule of decision for the courts of this country, the official act of a foreign sovereign." *W.S. Kirkpatrick*, 493 U.S. at 405 (citation omitted); *see also Blasket*, 2024 WL 4298808, at *12 (rejecting act of state defense to ICSID award because court's role "is cabined to examining ICSID's jurisdiction over the dispute, the authenticity of the award, and whether ICSID would treat the award as binding" (citing *Valores*, 87 F.4th at 520)).[7]

---

[6]    As the D.C. Circuit has noted, Congress did not even afford ICSID awards the limited judicial review available under the Federal Arbitration Act, into whether the award was "procured by corruption, fraud, or undue means" or rendered in excess of the arbitrator's powers. 9 U.S.C. § 10; 22 U.S.C. § 1650a(a); *see Valores*, 87 F.4th at 520 (observing that Congress reduced the scope of review of ICSID awards "below even the extremely limited review available under the FAA" (citation omitted)).

[7]    The Court's conclusion is reinforced by the fact that when a respondent asserts the act of state doctrine, it is an affirmative defense. *See Helmerich & Payne Int'l Drilling Co. v. Bolivarian Republic of Venezuela*, 971 F. Supp. 2d 49, 62 (D.D.C. 2013) (citing *Ramirez de Arellano v. Weinberger*, 745 F.2d 1500, 1534 (D.C. Cir. 1984)); *Konowaloff v. Metro. Museum of Art*, 702 F.3d 140, 146 (2d Cir. 2012); *United States v. Sum of $70,990,605*, 234 F. Supp. 3d 212, 242 (D.D.C. 2017) ("The act of state doctrine is an affirmative defense."). Accordingly, at the motion to dismiss stage, the defense applies only "when the facts that give rise to the defense are clear from the face of the" petition. *Smith-Haynie*, 155 F.3d at 578.

3.  *The foreign sovereign compulsion doctrine does not bar enforcement of the award.*

Lastly, Croatia argues that principles of international comity prevent enforcement of the award, according to the foreign sovereign compulsion doctrine. This doctrine has been applied in certain contexts "where a Court compels compliance with U.S. law in a manner that may put a litigant at odds with its obligations under foreign law." *Blasket*, 2024 WL 4298808, at *13 (citing examples); *see also* Restatement (Fourth) of Foreign Relations Law § 442 cmt. 10 (2018). Croatia argues that requiring it "to pay a judgment resulting from the Award would force Croatia to make unlawful payments in violation of EU State-aid law" and "recognize and validate an award that contravenes EU law." ECF No. 31-1 at 43, 44.

The Court is not persuaded that international comity counsels against enforcement of an ICSID award. "International comity 'is the recognition which one nation allows within its territory to the legislative, executive or judicial acts of another nation.'" *Usoyan v. Republic of Turkey*, 6 F.4th 31, 48 (D.C. Cir. 2021) (quoting *Hilton v. Guyot*, 159 U.S. 113, 164 (1895)). And it is "the central precept of comity" that "the decisions of foreign tribunals should be given effect in domestic courts, since recognition fosters international cooperation and encourages reciprocity, thereby promoting predictability and stability through satisfaction of mutual expectations." *Laker Airways Ltd. v. Sabena, Belgian World Airlines*, 731 F.2d 909, 937 (D.C. Cir. 1984). It would be contrary to that precept to set aside an ICSID award that resulted from several years of arbitration before a tribunal convened under a multilateral agreement between nations. To the contrary, as one court in this District put it, "comity concerns are essentially 'baked in' to the ICSID convention and its implementing statute." *Blasket*, 2024 WL 4298808, at *13. Indeed, Croatia itself recognized the finality of ICSID awards by signing the ICSID Convention, which provides that awards are binding and not subject to appeal or any other remedy. ICSID Convention art. 53(1); ECF No. 1

11

¶ 8 n.2. And this Court is bound by Congress's determination that courts "shall" enforce ICSID awards. 22 U.S.C. § 1650a(a).[8]

## III.    Conclusion

For these reasons, Croatia's motion to dismiss, ECF No. 31, is denied.

_____

AMIR H. ALI
United States District Judge

Date: April 16, 2025

---

[8]    Relying on a declaration, Croatia argues that following an order to enforce the award could put it in violation of EU law, creating a conflict between U.S. law and its foreign obligations. ECF No. 31-1 at 44. Even setting aside the propriety of relying on a declaration outside the pleadings at this stage, this is insufficient to trigger the compulsion doctrine in this context. To begin with, Croatia does not provide any evidence to indicate that the consequences it mentions, such as sanctions, are certain or even likely. *See Blasket*, 2024 WL 4298808, at *14 ("[W]hen considering whether comity considerations should stay the judiciary's hand, many U.S. courts have considered the certainty to which the party will face consequences abroad."). Moreover, as a court in this District aptly noted in response to a similar argument, Croatia's proposed solution—declining to enforce the ICSID award—would just create its own conflict, placing the United States in violation of its obligations to recognize the award under the ICSID Convention. *See id.* at *13 (citing ICSID Convention art. 54(1)).